USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/6/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LINDA ROZENFELD,

                         Plaintiff,

   -against-

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

                         Defendant.

No. 23 Civ. 07028 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Linda Rozenfeld ("Plaintiff") brings this action against Hartford Life and Accident Insurance Company ("Defendant") alleging (1) breach of contract related to an accidental death policy that Plaintiff's husband had taken out on his own behalf and (2) violation of New York Insurance Law § 3420. (Complaint or "Compl.", ECF No. 1.)

    Presently before the Court, are Defendant's motion for summary judgment of Plaintiff's claim (the "Motion", ECF No. 25.) and Plaintiff's cross motion for summary judgment and to amend the pleadings. (the "Cross Motion", ECF No. 28.) For the following reasons, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Cross Motion.

## BACKGROUND

### I. Factual Background

    The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. The following facts are undisputed unless otherwise noted.

    Plaintiff's husband was hospitalized at New York Presbyterian Hospital due to complications related to COVID-19. (Pltf.'s MoL. at 2.) On July 27, 2020, Plaintiff's husband died

while in New York Presbyterian's care. (*Id*.) A subsequent internal investigation at the hospital revealed that Plaintiff's husband died when a physician assistant attempted to replace a tracheostomy tube and failed to properly insert it into the trachea and instead inserted it into a false passage. (*Id*. at 3.) This misplacement caused Plaintiff's husband to experience a "catastrophic drop in oxygen saturation" that caused "brain hypoxia" from which he never recovered. (*Id*.)

In 2012, Plaintiff's husband purchased an accidental death insurance policy. (*Id*.) Plaintiff claims she was not aware of this policy at the time of her husband's death. (*Id*.) The policy provides an accidental death benefit that reads:

> "If You or Your Dependents sustain an Injury that results in Loss of life within 90 days of the date of accident, We will pay the deceased person's amount of Principal Sum after We receive Proof of Loss, in accordance with the Proof of Loss provision." (Def.'s MoL. at 2.)

"Injury" is defined in the policy as "bodily injury resulting (1) directly from an accident; and (2) independently of all other causes; which occurs while You or Your Dependents are covered under The Policy." And as is common in insurance, there are also exclusions to this policy, which includes "loss resulting from: (1) sickness or disease … or (2) medical or surgical treatment of a sickness or disease." (*Id*. at 3.)

Following her husband's death, Plaintiff requested that Defendant send her a copy of the relevant policy. On December 7, 2022, Plaintiff furnished Defendant with a copy. (Pltf.'s MoL. at 3.) On January 4, 2023, Plaintiff submitted a "Proof of Loss," which is one of the policy's requirements to file an insurance claim. (*Id*.) Plaintiff claims that she perfected her proof of loss per the policy with her initial submission to Defendant. (*Id*.) Defendant claims otherwise that

Plaintiff's proof of loss was deficient and that she never properly submitted all the required documentation. (*Id*. at 5-6.) Rounds of correspondence ensued between the parties but the tick tock between Plaintiff and Defendant on this issue is not worth recounting for purposes of this Motion or Cross Motion. On June 16, 2023, Defendant formally denied Plaintiff's claim. (*Id*. at 6.) Plaintiff maintains that Defendant's own policy requires payment within 30 days after receipt of a perfected proof of loss. (*Id*.) Plaintiff argues that the following language from Defendant's policy controls: "when We determine that benefits are payable, We will pay the benefits in accordance with the Claims to be Paid provision, but not more than 30 day(s) after such Proof of Loss is received." (*Id*.)

## II.     Procedural History

On August 3, 2023, Plaintiff filed this action in New York State Supreme Court alleging breach of contract related to an accidental death policy that Plaintiff's husband had taken out on his own behalf and violation of New York Insurance Law § 3420. (Compl., ECF No. 1.) On August 9, 2023, the action was removed from New York State Supreme Court to the United States District for the Southern District of New York where it now sits. On June 7, 2024, Defendant filed a memorandum of law in support of the Motion ("Def.'s MoL.", ECF No. 26.) as well as a reply memorandum of law. ("Def.'s Reply", ECF No. 32.) Plaintiff filed a memorandum of law in support of the Cross Motion and in opposition to the Motion. ("Pltf.'s Opp.", ECF No. 29.) Plaintiff also filed a reply memorandum of law on the Cross Motion. ("Pltf.'s Reply", ECF No. 33.)

## LEGAL STANDARDS

### I.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each

4

party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II. Leave to Amend Pleadings Standard

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires." Leave to amend may be denied when there is bad faith, undue prejudice to the opposing party or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). It is within the district court's discretion to deny leave for "good reason," including any of those mentioned above. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A pleading's amendment is futile "where the proposed [amendment] could not survive on its face." *Pall Corp. v. Entegris, Inc.*, No. 05CV5894JFBWDW, 2007 WL 9709768, at *2 (E.D.N.Y. May 25, 2007).

## DISCUSSION

## I. The Policy Exclusion Applies

Defendant's policy covers accidental deaths resulting from injury. "Injury" as defined by the policy excludes loss resulting from "medical or surgical treatment of a sickness or disease." Plaintiff maintains that the placement of the endotracheal tube into the false passage instead of the trachea could not be properly characterized as part of the medical treatment because it was an accident and not part of the prescribed treatment. As a result, Plaintiff argues, the policy exclusion does not apply, and the benefits are past due. On the other side of the aisle, Defendant argues that a mishap during treatment is still part of the treatment and not an accident separate and apart from it. As a result, Defendant argues, the policy exclusion applies, and Plaintiff's claim was rightly denied. The weight of the caselaw supports Defendant's argument.

As Judge Posner wrote nearly 35 years ago, the question of whether a mishap during treatment should be classified as part of the treatment itself or as an accident presents only "a tiny question" because numerous courts had already answered this question. *See Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050 (7th Cir. 1991). Even then, the balance of caselaw supported the view that the two were not distinct events but that a mishap during treatment was still part of the treatment. *See Whetsell v. Mutual Life Ins. Co.*, 669 F.2d 955 (4th Cir.1982); *Castorena v. Colonial Life & Accident Ins. Co.*, 107 N.M. 460, 760 P.2d 152 (1988); *Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182 (S.D.Ill.1977), aff'd without opinion, 588 F.2d 835 (7th Cir.1978), and *Krane v. Aetna Life Ins. Co.*, 698 F. Supp. 220 (D.Colo.1988); contra, *Mayfield v. Metropolitan Life Ins. Co.*, 585 S.W.2d 163, 168–69 (Mo.App.1979). Judge Posner explained that injuries from medical treatment always pose a risk, and we assume that risk whenever we undergo a procedure. *See Senkier*, 948 F.2d at 1051. But these risks are not "accidents" as that term is traditionally understood in the context of insurance policies or in our common understanding of the term. *Id*. at 1052-53. Moreover, to hold otherwise would convert insurance policies into medical malpractice policies, which are two distinct policies for two distinct injuries. *Id*. at 1054. New York Courts have followed this same approach as articulated by Judge Posner in *Senkier*.

In *Bracey v. Metro. Life Ins. Co*., 54 Misc. 2d 175, 282 N.Y.S.2d 121 (App. Term 1967), a similar exclusion applied. There, the victim had asphyxiated by aspiration of blood due to a malfunctioning suction machine. The court held that "if death occurs as a result of surgery [a]nd not by reason of the intervention of some outside agency, the result, in the eyes of the law, is not 'accidental.'" *Id*. at 177. Accordingly, the court denied the plaintiff from recovering any benefit from the insurance company. Other New York Courts have followed suit when similar exclusions were involved. *See Wilson v. Travelers Ins. Co.*, 29 A.D.2d 312, 287 N.Y.S.2d 781 (1968)

(concluding that anesthesia that caused the brain to swell and for the victim to expire was part of the surgical treatment); *Kells v. New England Mut. Life Ins. Co.*, 34 A.D.2d 908, 311 N.Y.S.2d 391 (1970) (granting summary judgment dismissing recovery for accidental death because failure of blood clotting machine that resulted in excessive bleeding was part of surgical treatment and thereby excluded from coverage); *Pawlik v. Stonebridge Life*, 21 A.D.3d 1283, 802 N.Y.S.2d 575 (2005) (granting summary judgment for claim that detached tracheostomy tube, whether the result of medical malpractice or not, was part of medical or surgical treatment and excluded under the policy).

In response, Plaintiff cites *Barnes v. Am. Int'l Life Assur. Co. of New York*, 681 F. Supp. 2d 513 (S.D.N.Y. 2010). But Plaintiff misreads *Barnes*'s import. True, Judge Chin did write that some courts have held that death in connection with medical or surgical treatment are accidental deaths while others have held that they are not. *Barnes*, 681 F. Supp. 2d at 523. But the glaring distinction in *Barnes* was that there was no medical or surgical treatment exclusion in the policy at issue there, as here. *Id* at 524. The absence of this exclusion was crucial to Judge Chin's analysis as he concluded, and in doing so distinguished *Senkier*, that the policy coverage would be different if it contained language related to medical or surgical treatment. Judge Chin wrote "the policy in *Senkier* expressly excluded, in addition to sickness or disease, medical or surgical treatment of a sickness or disease. The language shows that if an insurer wants to exclude losses from medical or surgical treatment, it knows how to do so. Here, no such language was included in the Policy." *Id*. at 527 (internal citations and quotations omitted). Defendant's policy contains that exact language. Accordingly, *Barnes* provides Plaintiff no cover from the caselaw that points the Court to find that her claim fell within the policy's exclusion.

7

Plaintiff also attempts to make arguments based on policy considerations. Plaintiff argues Defendant's reading of the policy, would hollow out its coverage and disallow recovery for "anything and everything that happens to a patient within the four walls of a hospital." (Pltf.'s MoL. at 15.) As an illustration, Plaintiff provides the following example. "[I]f a patient was directed to walk the hospital floor after a hip replacement and slipped on water, it would not logically be treatment, but certainly an accident." (*Id.*) While the Court will not address this hypothetical, similar scenarios were addressed by Judge Posner in *Senkier*. Take, for example, Judge Posner's hypothetical where the ceiling of an operating room collapses while the patient is on the operating table and kills him. There, the treatment would only be tenuously connected to the treatment and could just as easily have happened in the victim's home. As Judge Posner explained, a situation such as that would be closer to the line of our understanding of an accident as opposed to a mishap during medical treatment. But that hypothetical is miles from this case. Here, the average person would not be replacing endotracheal tubes at home risking the potential for misplacement in a false passage. This sort of mishap is only properly understood as being related to medical or surgical treatment and thereby properly falls within the policy's exclusion. Accordingly, the policy exclusion applies, and Plaintiff's husband's injury is not covered.

II.   **New York Insurance Law § 3420 Does Not Apply**

Plaintiff argues that Defendant breached New York Insurance Law § 3420 by failing to pay "as soon as reasonably possible." (Pltf.'s MoL. at 7.) Plaintiff alleges that she perfected her proof of loss as soon as was possible on January 4, 2023 when Plaintiff learned about her husband's policy. Consequently, Plaintiff argues, payment was due no more than 30 days later per Defendant's policy language (discussed more fully *infra*). Yet Defendant improperly denied her

claim 165 days later, which not only violated the terms of its own policy but also New York Insurance Law § 3420. Plaintiff quotes the following language from § 3420(d)(2) in support:

> "If under a *liability policy* delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." (*Id.*) (emphasis added)

Plaintiff further argues that courts have held that delays as short as 48 days have been found to violate § 3420's "as soon as reasonably possible" requirement. (*Id.*) Plaintiff argues that it then follows that Defendant must pay Plaintiff the benefits of the policy for violating § 3420. The Court disagrees.

§ 3420(d)(2) does not apply. As the plain text makes clear, this provision is applicable to *liability* insurance policies and not to accidental death insurance policies. These are two distinct types of insurance policies. "Accidental death does not fall within the scope of 'liability' insurance but rather falls under a separate line of 'accident and health' insurance. Laws related to 'accident and health' insurance are codified in Article 32 of the New York Insurance Law." *Rauch v. CMFG Life Insurance Co.*, No. 23-CV-09790 (PMH), 2025 WL 35007, at *3 (S.D.N.Y. Jan. 6, 2025)

9

(internal citations omitted). Accordingly, § 3420(d)(2) does not control and does not compel recovery from Defendant to Plaintiff.

### III. Leave to Amend is Futile

Plaintiff requests leave to amend her pleading to add language from Defendant's policy as part of her allegation that Defendant violated its terms. (Pltf.'s MoL. at 9.) Plaintiff seeks to add this language to her Complaint:

> "When We determine that benefits are payable, We will pay the benefits in accordance with the Claims to be Paid provision, but not more than 30 day(s) after such Proof of Loss is received." (*Id.*)

As mentioned *supra*, Plaintiff argues that this language shows that Defendant violated the terms of its own policy by failing to pay within 30 days after receiving her perfected proof of loss. (*Id.* at 6.) Plaintiff alleges that her proof of loss was properly submitted on January 4, 2023, as required, but her claim was denied 165 days later. (*Id.* at 7.) Plaintiff argues that Defendant was obligated to pay within that 30 day period as stipulated by the policy and, as a result of Defendant's failure to do so, Defendant is now estopped from denying or disclaiming under the policy. (*Id.* at 8.) The Court disagrees.

First, Plaintiff editorializes the relevant language. Plaintiff reads out the first seven words of the clause—*when we determine that benefits are payable*—in arguing that Plaintiff breached the terms of its own policy. Defendant never determined that the benefits were payable and, as discussed, Defendant properly denied Plaintiff's claim for falling within the policy's exclusions. Second, tardiness of denial would not lead to payment for an otherwise properly denied claim.

Plaintiff argues that Defendant is estopped from denying her claim, but this argument is without force because there have been no allegations of reliance on the part of Plaintiff because of Defendant's actions. *See Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (determining that the elements of promissory estoppel in New York are a clear and unambiguous promise that caused reasonable and foreseeable reliance by the promisee and unconscionable injury to the relying party as a result of the reliance). Third, if the Court were to grant leave to amend, it would be futile. As the Court explained, New York Insurance Law § 3420 does not apply and Plaintiff's husband's injury falls within the policy's exclusions. As a result, Plaintiff's proposed amendment that would add language related to the timeline of a payable claim would not change the disposition of Plaintiff's case. Accordingly, leave to amend the pleading is denied.

  It is deeply unfortunate that Plaintiff had to endure the tragedy of losing a loved one because of a medical mishap. But the language of the policy is clear and so is the law. As it must, the Court is forced to follow its guide. Accordingly, the Court must conclude that Plaintiff's husband's injury is not covered by the policy, and for the reasons already mentioned, amendment would be futile.

**CONCLUSION**

Defendant's motion for summary judgment is GRANTED. Plaintiff's cross motion for summary judgement is DENIED. Plaintiff's motion to amend the pleadings is DENIED.

The Clerk of Court is directed to enter judgment in favor of Defendant and to terminate the action. The Clerk of Court is directed to terminate the motions at ECF No. 25 and 28.

Dated: February 6, 2025  SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge